UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**REGINALD BIRCH**                                                      **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL**                                                    **NO. 05-1412-A-M2**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in chambers in Baton Rouge, Louisiana, October 18, 2007.

                                              **MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

REGINALD BIRCH                                                                              CIVIL ACTION

VERSUS

BURL CAIN, ET AL                                                                            NO. 05-1412-A-M2

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Reginald Birch ("Birch"). The State has recently filed an answer and a supplemental opposition to that petition. (R. Doc. 23 and 24).

## FACTS & PROCEDURAL BACKGROUND

Birch was indicted on two counts of aggravated rape in violation of La. R.S. 14:42.[1] He waived formal arraignment and entered a plea of not guilty. Birch waived his right to trial by jury and proceeded to a bench trial on June 26, 2000. Following trial, the trial judge found Birch guilty as charged on both counts of aggravated rape. Birch filed a motion for post-verdict judgment of acquittal, a motion to modify verdict, and a motion for a new trial, all of which were denied by the trial judge. He was then sentenced to two concurrent life sentences without the benefit of probation, parole, or suspension of sentence. He filed a motion for reconsideration of sentence that was also denied by the trial judge.

Birch appealed his conviction and sentence to the First Circuit Court of Appeal, alleging that he was denied effective assistance of counsel at sentencing and at the hearing

---

[1] According to the state court record, Birch was charged with having forcefully raped his girlfriend's daughter, Miranda Wallace, on two occasions on July 3, 1998 and February 3, 1999. According to the victim's testimony, Birch overcame her resistance on the first occasion through physical power, while on the other occasion, he threatened her with a knife. Birch told the victim he would kill her if she ever told anyone about the rapes. The record also indicates that, when the victim's mother, Glenda Terrance, terminated the relationship with Birch, he called the mother's place of employment and told her that he had "fucked [Miranda] and had her legs all in the air twice." The victim's mother then asked the victim about the incidents and reported the rapes to the police the following day.

on the motion to reconsider sentence and that his sentence was unconstitutionally excessive. The First Circuit Court of Appeal affirmed his conviction and sentence on January 18, 2002. *State v. Birch*, No. 2001-KA-0673 (La. App. 1st Cir. 1/18/02). Birch also applied for a supervisory writ to the Louisiana Supreme Court, which was denied on September 13, 2002. *State v. Birch*, 2002-0580 (La. 2002), 824 So.2d 1186.

On or about August 15, 2003, Birch filed an application for post-conviction relief, wherein he asserted (1) that his trial counsel was ineffective in failing to investigate various witnesses and in failing to object to the State's use of other crimes evidence; and (2) that his appellate counsel was ineffective in failing to raise the issue of insufficient evidence. The trial court, basing its decision upon the findings of Commissioner John Smart, Jr., denied Birch's application for post-conviction relief on August 5, 2004. According to Birch's "Opposition to Findings of Magistrate" filed herein, he filed a writ application with the First Circuit Court of Appeal on August 31, 2004, which was denied on November 17, 2004. *State v. Birch*, 04-1987 (La. App. 1st Cir. 11/17/04). Birch also submitted a writ application to prison officials for filing with the Louisiana Supreme Court on or about December 14, 2004, which was denied on November 29, 2005. *State ex rel. Birch v. State*, 2005-0060 (La. 11/29/05), 916 So.2d 164.

Birch then filed the present habeas petition on December 19, 2005, wherein he again asserts the claims raised in his post-conviction relief application. Procedural issues relative to Birch's petition were previously resolved by the Court. Specifically, on June 21, 2007, the undersigned issued a report and recommendation, finding that, based upon newly discovered evidence, Birch appeared to have exhausted his state court remedies, and the merits of his habeas petition were therefore ripe for consideration. The district

judge adopted that report and recommendation as his ruling on July 16, 2007, and instructed the State to submit arguments concerning the merits of Birch's petition with forty-five (45) days. The State filed a supplemental opposition concerning the merits of Birch's petition on August 30, 2007, which the Court now considers.

## **LAW & ANALYSIS**

As mentioned above, each of the claims contained in Birch's habeas petition was previously submitted to and ruled upon by the state courts through review of his post-conviction relief application. In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court, the Court must find that adjudication of such claim: (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2).

In addition, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994). Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to § 2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures. *Id.* at 631.

As noted above, both of the claims asserted by Birch herein relate to whether or not his counsel, at the trial and appellate levels, was ineffective. A habeas petitioner seeking

to prove ineffective assistance of counsel must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must affirmatively demonstrate:

> (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816. When it is apparent that the alleged incompetent acts of the attorney were in fact conscious strategic or tactical trial decisions, review of the acts must be "highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2587 91 L.Ed.2d 305 (1986). Mere error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17. A conscious and informed tactical decision cannot be the basis for constitutionally ineffective assistance of counsel unless it is "so ill-chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1982).

**I.     Was Birch's trial counsel ineffective?**

    **A.     Trial counsel's alleged failure to investigate various witnesses:**

As noted above, the last state court to review the merits of this claim in detail was the 19th Judicial District Court, through Commissioner Smart's report and recommendation on Birch's post-conviction relief application. The Commissioner addressed Birch's claim with respect to each of the relevant witnesses and found that the claim lacked merit

because Birch's trial counsel sufficiently investigated, examined, and/or cross-examined those witnesses.

### (1) Glenda Terrance

Relative to Glenda Terrance ("Ms. Terrance"), the victim's mother who was called as a witness by the prosecution, Birch contends that, had his counsel properly investigated Ms. Terrance's background, he would have discovered that she was a convicted felon and that she had been accused of other criminal conduct. Birch asserts that his counsel would have been able to use that information to besmirch Ms. Terrance's credibility while on the stand. However, the Commissioner determined, and this Court has confirmed, that defense counsel did, in fact, question Ms. Terrance at trial regarding her prior criminal conviction and other prior alleged wrongful acts, including the issuance of worthless checks and the use of a co-worker's credit card to establish telephone service, in an effort at casting doubt on her credibility at trial and that Ms. Terrance admitted that she was convicted of felony theft and served three months in jail and four years on probation relative to that conviction.[2][3] Additionally, the Commissioner concluded that, even if Birch was not satisfied with the level of investigation that his counsel devoted to Ms. Terrance prior to trial, his claim should nevertheless be dismissed because he could not show prejudice as

---

[2] *See*, Tr. Transcript, p. 110-114; 119-120. Defense counsel also reiterated, during his oral argument relative to petitioner's motion for judgment of acquittal and during his closing arguments, how Ms. Terrance's prior criminal conviction and other wrongful conduct called her veracity into question. *Id.*, p. 186, 259.

[3] The Commissioner further explained in his report that, pursuant to La. C.E. art. 609.1, only a witness's *convictions* may be used for purposes of attacking credibility, and the details related to such convictions are not admissible except under certain limited circumstances. Thus, Birch's suggestion that defense counsel should have questioned Ms. Terrance as to any other past alleged criminal conduct for which she was never convicted lacks merit because such information would have been inadmissible to impeach her credibility.

a result of such failure, as his counsel was still able to cast doubt on Ms. Terrance's credibility by virtue of his questioning of her concerning her prior criminal conviction.

This Court agrees with the Commissioner's conclusion. The fact that the trial judge noted in his ruling on Birch's motion for judgment of acquittal that defense counsel had called into question Ms. Terrance's veracity on account of her prior conviction demonstrates that defense counsel achieved the objective desired by Birch relative to this claim,[4] regardless of whether defense counsel's pre-trial investigation of Ms. Terrance satisfied Birch. The trial judge, as the fact-finder, was completely within his province to weigh the testimony given by Ms. Terrance in light of any damage that was done to her credibility by defense counsel's questioning and to nevertheless decide to give credence to her testimony. In other words, the fact that defense counsel did not completely discredit Ms. Terrance's testimony by questioning her regarding her prior conviction and criminal conduct does not indicate that he rendered ineffective assistance of counsel under the standard set forth in *Strickland*.

**(2)   Tina Williams:**

Birch also contends that his counsel should have further investigated Tina Williams, a co-worker and friend of Ms. Terrance, prior to trial. He asserts that, if his counsel had interviewed Ms. Williams prior to trial, he could have questioned her at trial regarding the fact that she had heard Ms. Terrance once state that she would "get back" at Birch for a past disagreement. However, the Court has reviewed the trial transcript and finds that Ms.

---

[4] *See*, Tr. Transcript, p. 193 (where the trial judge specifically stated, in his ruling on Birch's motion for judgment of acquittal, that he did "not disbelieve the [victim's] mother's testimony, although [defense counsel] offered evidence of a previous conviction").

Williams was actually called as a defense witness at trial and specifically questioned relative to that event.[5]  Accordingly, even if defense counsel failed to investigate Ms. Williams pre-trial, he nevertheless achieved the overall objective sought by Birch with respect to that witness, and the Commissioner was therefore correct in his finding that defense counsel did not act deficiently in failing to investigate her.  Furthermore, Birch has failed to show how the mere failure to conduct a pre-trial investigation of this witness prejudiced him.

### (3)    Detective Ray Williams:

As to Detective Ray Williams, Birch asserts that he was a personally biased witness because Birch's father once dated Detective Williams' sister, and the relationship had ended in strife, such that Detective Williams and Birch's father harbored ill feelings toward one another.  Birch further contends that Detective Williams investigated a prior domestic disturbance in which he and Ms. Terrance were involved and that, in the course of that investigation, Detective Williams befriended Ms. Terrance, and she therefore specifically asked for Detective Williams to investigate the crime in question.  Birch argues that, based upon those events, Detective Williams had a personal vendetta against him and that his attorney failed to bring that information out at trial, despite his knowledge of it.

In his recommendation, Commissioner Smart explained that "[g]eneral prejudices or special biases which are too irrelevant to or too remote from issues of the case at trial are considered improper impeachment of a witness for purposes of exposing bias,"[6] and

---

[5] *See,* Tr. Transcript, pp. 206-207.

[6] *See,* Commissioner's Report, citing *State v. Bruno*, 526 So.2d 1287, 1289 (La. App. 3 Cir. 1988), quoting *State v. Ditcharo*, 452 So.2d 1201 (La. App. 5 Cir. 1984).

concluded that, because the bias did not specifically relate to Birch or to the victim and instead related to Birch's father and the victim's mother, there did not appear to be a strong enough alleged personal bias against the petitioner for the information to be properly used at trial for impeachment. The Commissioner further noted that, under Louisiana Supreme Court precedent, *State v. Williams*, 445 So.2d 1171 (La. 1984), the failure to question a detective as to his bias constitutes harmless error where the witness "was not an eyewitness, and the testimony given was essentially identical to the versions of the victim and the defendant." The Commissioner found that, since Detective Williams was not present when the crime in question allegedly occurred but instead simply investigated the victim's version of events, he provided similar testimony to that of the victim and likely provided little influence over the judge's decision. In fact, in his ruling on Birch's motion for judgment of acquittal and his ultimate ruling convicting Birch as charged, the trial judge made no reference to Detective Williams' testimony being a persuasive factor and instead relied primarily upon the testimony of the victim and her mother. Accordingly, defense counsel's decision not to question Detective Williams about a remote theory of bias would be harmless error, if error at all.

     Finally, the Commissioner found that, pursuant to *Strickland*, even if Birch's counsel should have investigated and revealed the bias theory at trial, it is nevertheless unlikely that the result of Birch's case would have been different had he done so. The Court agrees with the Commissioner's conclusions. Birch's bias theory is speculative, and particularly given that this was a bench trial, it likely would not have been given credence by the factfinder. The Court finds it highly unlikely that a law enforcement official, such as Detective Williams, would have had such a personal vendetta against Birch based upon the particular

circumstances alleged that he would have perjured himself at trial in order to aid in convicting Birch.  Furthermore, the decision as to whether or not to pursue Birch's bias theories at trial was a tactical or strategic one, which, as noted above, is to be given great deference and presumed to be within the wide range of reasonable professional competence.  Accordingly, the Commissioner's finding that defense counsel did not act ineffectively in failing to bring out the alleged bias theories relating to Detective Williams was appropriate and in accordance with the standards set forth in *Strickland*.

      **(4)**    **Christopher Birch:**

Birch also asserts that his counsel was ineffective in not interviewing his brother, Christopher Birch, prior to trial.  However, the Court's review of the record indicates that Christopher Birch was called as a defense witness and that he provided an alibi for Birch on the day in question.[7]  Birch has not provided to this Court, or to the courts at the state level, any explanation as to what other information his brother would have provided had defense counsel interviewed him prior to trial.  The Court, like Commissioner Smart, finds that the mere failure to conduct a pre-trial interview with a witness, without any evidence indicating that such interview would have disclosed information helpful to the petitioner's defense which was not otherwise revealed at trial, is insufficient to establish ineffective assistance of counsel.

---

[7] *See,* Tr. Transcript, pp. 196-198 (where Christopher Birch testified that his brother was at his house on July 3, 1998 (the day of the first alleged rape) helping him clean up the yard to prepare for a 4th of July celebration there the next day).

**(5)     Miranda Wallace:**

Finally, Birch argues that his trial counsel was ineffective because he failed to conduct a pre-trial interview of Miranda Wallace, the alleged victim, and as a result, did not subject her to an adequate cross-examination. He contends that the factfinder should not have been convinced by the victim's testimony because of her very specific recollection of the crime. However, the Commissioner determined, based upon the record, that defense counsel actually brought out several discrepancies in the victim's testimony and concluded that Birch's claim lacked merit because he failed to show with any specificity how defense counsel was ineffective when questioning the victim. This Court has also reviewed the trial transcript and finds that defense counsel's cross-examination of Miranda Wallace uncovered several discrepancies in her testimony, which were considered by the factfinder in determining what weight to give to her testimony.[8]

While Birch contends generally that his counsel should have conducted a pre-trial investigation relative to a purported prior, false allegation of sexual assault that Miranda Wallace made against another individual, which could have been used to impeach her,[9] he

---

[8] For example, in his oral argument relative to Birch's motion for judgment of acquittal and in his closing arguments, defense counsel pointed out that the alleged victim's testimony was "just too perfect," in that she had "absolutely no question as to what happened," and that, although Miranda testified that she only missed one school day in 1999, the day on which she was allegedly raped, her testimony in that regard was contradicted by that of Danice Green, the custodian of records from the victim's school, who indicated that the victim had missed four other days that year. *See*, Tr. Transcript, p. 187, 258; *See also*, Tr. Transcript, p. 193-195 (where the trial judge notes, in his oral ruling on Birch's motion for judgment of acquittal, that he considered defense counsel's argument regarding the discrepancy in dates and concerning the fact that the alleged victim's testimony was "too perfect," "rehearsed," or "coached" and that he did not find those factors sufficient to outweigh her credibility).

[9] Birch cites *State v. Smith*, 98-2045 (La. 1999), 743 So.2d 199, 201-03, for the proposition that a defendant may present evidence for impeachment purposes pursuant to La. C.E. art. 607(C) that a victim made prior false allegations regarding sexual activity.

provides no specific information as to whom defense counsel should have investigated relative to that allegation, other than Miranda Wallace.  Furthermore, the trial transcript indicates that defense counsel actually cross-examined Miranda Wallace at trial relative to that past allegation of sexual assault against another person, and her testimony contained no indication that such allegation was false.[10]  Accordingly, the Court does not see what benefit a pre-trial interview with the victim would have served relative to that allegation for purposes of impeachment.  In sum, Birch has failed to show that his attorney's conduct in investigating and cross-examining the victim was deficient and that, had his attorney performed a pre-trial interview, the outcome of his trial would have been different. Accordingly, all of Birch's claims that his trial counsel was ineffective in failing to investigate particular witnesses lack merit and should be dismissed.

### B.     Trial Counsel's alleged failure to object to the State's use of other crimes evidence:

In this claim, Birch asserts that his trial counsel was ineffective in failing to object to the State's introduction of evidence of other crimes committed by him, specifically, the State's reference to Birch's past physical abuse of the victim and her mother.  He contends that evidence of such prior abuse was only used to show his bad character and to prove that he acted in conformity therewith when he raped the victim.

Pursuant to La. C.E. art. 404(B), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." La. C.E. art. 404(B).  It may, however, be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

---

[10] S*ee*, Tr. Transcript, p. 151-52.

mistake or accident . . . or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Id.* At the state level, the prosecution argued that it did not use evidence of the prior instances of domestic abuse to prove that Birch acted in conformity therewith in raping the victim but instead used the history of past abuse to show that the victim had not disclosed the occurrence of the prior crimes at an earlier time because of her fear of Birch.

In his report, the Commissioner noted that, in certain instances, an attorney may choose not to object to other crimes evidence as a matter of strategy because the objection would only highlight the potential prejudice of a witness's statement or because defense counsel intends to remedy the prejudicial statement at a later time. The Commissioner went on to find that Birch's trial counsel elected to use the latter strategy and that, rather than object to the State's use of other crimes evidence at the time it was presented, he chose to downplay the significance of those prior acts during his closing argument by alerting the trial judge to the fact that, in the six years that Birch had been living with the victim and her mother, Child Protection had been contacted many times but was never informed of any complaints against Birch. The Commissioner further determined that, even if Birch proved that his counsel's failure to object to the other crimes evidence was deficient, he nevertheless failed to prove that he was prejudiced by such failure because he did not demonstrate that, absent admission of the other crimes evidence, the trial judge would have had a reasonable doubt as to his guilt.

The Court finds that the Commissioner's conclusions relative to this claim are in accordance with the standards set forth in *Strickland* and agrees that defense counsel's

decision as to when and how to address petitioner's prior wrongful acts/crimes was a strategic one.  Furthermore, although petitioner contends that his counsel did not object to the introduction of evidence of prior wrongful acts/crimes, the Court's review of the trial transcript indicates that he did, in fact, object to the introduction of the alleged victim's testimony, and to the introduction of certain photographs of the victim after she had been subjected to prior alleged physical abuse by Birch, on the ground that such evidence was irrelevant and prejudicial.  *See*, Tr. Transcript, p. 239-242.  Moreover, even if Birch's counsel's alleged failure to object to the other crimes evidence could be considered deficient, Birch has nevertheless failed to demonstrate that he was prejudiced by such conduct.  The Court has reviewed the record in this matter and finds no indication that the trial judge unduly relied upon the prior crimes evidence in convicting Birch of the crime in question.  In fact, as noted above, it appears that the trial judge primarily relied upon the testimony of the victim and her mother in rendering his decision,[11] and the trial judge's commentary at the hearing on the motions for new trial and for post-verdict judgment of acquittal indicates that any references the prosecution made to other crimes evidence in its opening arguments had "no impact" upon the trial judge's decision.[12]  In the Court's view, a change in the way defense counsel elected to approach the prior crimes evidence would not have changed the outcome of Birch's trial by creating a reasonable doubt as to his guilt in the trial judge's mind.  Thus, this claim should also be dismissed.

---

[11] *See*, Tr. Transcript, p. 263-264.

[12] *See*, Tr. Transcript, p. 323-324.

**II.   Was Birch's appellate counsel ineffective in failing to raise the issue of insufficiency of the evidence on appeal?**

In his final claim, Birch contends that his appellate counsel was ineffective in failing to raise the issue of insufficiency of the evidence on appeal; however, the Commissioner noted in his recommendation that such issue could not have been properly raised on appeal, even if Birch's appellate counsel had wished to assert it, because no objection had been lodged as to that issue at the trial court level.  The Commissioner further noted that Birch failed to allege any particular prejudice resulting from the failure to raise the issue of insufficiency of the evidence on appeal.  To demonstrate such prejudice, Birch would have to show that the First Circuit Court of Appeal would have reversed his conviction had it considered the issue of insufficiency of the evidence on appeal.  The Commissioner concluded that, in light of the evidence presented at trial, especially the trial judge's persuasion by the testimony of the victim and her mother, Birch failed to demonstrate that such a result was likely to have occurred in his case.

With his present habeas petition, Birch has again failed to submit any evidence or argument indicating that, if an insufficiency of the evidence claim had been raised on appeal, such a claim would have been successful, and the First Circuit would have overturned his conviction.  Under Louisiana law, in the absence of an internal contradiction or irreconcilable conflict in the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.  *State v. Carey*, 628 So.2d 27 (La. App.2d Cir. 1993), *writ denied*, 94-0018 (La. 1994), 635 So.2d 236.  The Louisiana Supreme Court has also held that the testimony of the victim and the investigating officer in a rape case is sufficient to convince a reasonable trier of fact beyond

a reasonable doubt of a defendant's guilt. *State v. Rivers*, 407 So.2d 1195 (La. 1981). The alleged victim in the present case testified that Birch raped her,[13] and the trial judge stated on the record, in his reasons for judgment, that he believed her. There was no internal contradiction or irreconcilable conflict in physical evidence because there was no physical evidence submitted relative to the crime.[14] Thus, under the law, the testimony of Miranda Wallace was sufficient evidence to convict petitioner. Since it does not appear that petitioner could have succeeded on his insufficiency of the evidence argument on appeal, his counsel, who was only required to assert meritorious claims on appeal, was not ineffective in failing to raise it. Accordingly, Birch has failed to rebut the presumed correctness of any of the Commissioner's findings by clear and convincing evidence, and his habeas petition should therefore be dismissed with prejudice.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Reginald Birch, be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, October 18, 2007.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[13] Her testimony satisfied all of the requisite elements of the charge of aggravated rape as defined in La. R.S. 14:42.

[14] Although the trial judge pointed out that he would have liked to have seen physical evidence in support of the prosecution's case, he nevertheless concluded that the law does not require it, and sufficient evidence existed to convict the petitioner based upon the testimony of the victim and her mother.